CatRON, J.
[1683 delivered the opinion of the Court. The defendant
was a constable of Williamson County, who had been indicted for extortion ; and at the July term, 1824, the cause came on for trial, and he was convicted, and judgment given by the County Court, that said Fields be removed from office, and fined ten dollars; from which judgment he appealed to the Circuit Court. The solicitor for the State then moved the Court that pending the prosecution in the courts above, Fields should be suspended from exercising the office of constable. Upon this motion the Court set forth “ that they are the same justices who sat upon the trial of the indictment against Fields, for oppressively taking out an execution, and for extortion, by collecting money and receiving fees, by color of the same, of one D. Knight, at the instance of Joseph Taylor, and who pronounced judgment that said Fields be removed from office, and fined ten dollars; from which judgment an appeal was taken to the Circuit Court; and all *512 the above-mentioned facts and circumstances being known to the Court, it is ordered by the Court that the said Nelson Fields -be suspended and deprived of the privilege of exercising the office of constable, for said county of Williamson until tlje said cause shall be finally determined and ended in the courts above.” From this order of the County Court, Fields prayed an appeal, which the Court refused to grant; to which refusal Fields filed his bill of exception. He then filed his petition with the circuit [169] judge, for a writ of certiorari, to bring the cause to the Circuit Court, which writ was granted him. At the August term, 1824, of the Circuit Court of Williamson County, it was adjudged “ that the order of the County Court, removing the defendant from his office of constable, be s.et aside, and that said Nelson Fields be restored to his said office of constable ”; from which the solicitor prayed an appeal, in the nature of a writ of error, to this Court.
Upon this statement of facts, the counsel for the defendant, Fields, contend that the attorney for the State had no right to his writ of error on behalf of the government, because this is a criminal cause; to which it is a sufficient answer to say that this is not a criminal proceeding, affecting the person of the defendant; that it merely goes to deprive him of a franchise, granted to. him by the same power who now claims the right to take it away for a misuser, and the State and the defendant have equal rights to a writ of error. That the defendant had the right is clear. This is settled by the case of Sevier v. The Justices of Washington County, Peck’s Rep. 334; see Act of 1811, ch. 72, § 11. And by the Act of 1794, ch. 1, § 45, it is made the duty of the solicitor to appeal, if he thinks the State has been injured.
But the main question is, had the County Court the power to remove or suspend the constable ? To ascertain this, we are compelled to resort to the common law, there being no statute that applies to such a case. The English courts of Quarter Sessions in this respect, have had, and exei’cised a jurisdiction similar to our courts of pleas and quarter sessions; and to the practice of those courts we are compelled to resort, to ascertain’ the common law upon this subject. Sergeant Hawkins, in his Pleas of the Crown, Vol. 2, p. 99, § 38, says, “ that the sheriff or steward, having power to place a constable in his office, has by consequence a power of removing him.” On the same principle that those who appoint have authority to remove, have the justices of the peace, time out of mind in England, both appointed, and, for good cause, removed constables. 2 Hawk. 103, § 49. Burns, in his Justice of the Feace, explains the above general authority, and states the practice to be, that a constable [170] must be removed by a majority of the justices of the district,- or by the Sessions of the Peace. 1 Burns’s Justice, 308. Hence it is clear law in England that the Sessions have power to displace a constable for good cause; but what such good *513 canse is, cannot be very clearly ascertained. Any abuses that bring disgrace upon the justice of the country were considered sufficient. Extortion has ever been deemed as most criminal and disgraceful; and officers guilty thereof, no doubt removable. Stat. West. 1, ch. 26; 2 Inst. 209; 5 Ba. Abr. 213. Suppose a constable had been convicted of petty larceny in the County Court, of which county he was constable, and the facts had been undoubtedly proved against him, from which conviction he appealed to the Circuit Court; would it not have been the duty of the County Court, who heard the cause, to have removed or suspended him during the pen-dency of the cause, by his appeal ? By change of venue, and writs of error, the criminal could easily have kept off the punishment for two years, and by this means put himself above the law, if the County Court had not the power of removal. The conviction, when produced, would only be evidence of the fact alleged in the bill of indictment; and these facts the Court have for this purpose as much right to inquire into as the jury; which will be presently seen. The convicted felon is an unfit person to be the officer of a court. Brownshall’s Case, Cow. 829; King v. Southerton, 6 East, 142. The principle that will justify extortion will sanction theft; and the constable aggravates his crime by perjury in fact, in violating his oath. 2 Inst. 209. The ceremony of dismissing a constable and setting him in the pillory, would have been a light matter in the days of Lord Coke, had the Court of Sessions adjudged that he was guilty of extortion. Yet in this country it would most probably be unconstitutional to inflict punishment upon the person of the offender otherwise than by a conviction upon presentment or indictment. But the removal from office, being a civil proceeding, not affecting the person, and no bar to an indictment for the same offence, the finding of a jury is not necessary to authorize the Court to remove. If an officer of the Court abuses the [171] process thereof, the Court has power to attach him, and punish by imprisonment for the contempt, and this is no bar to an indictment for the same offence. 2 Hawk. 216-219; 4 Com. 287, 288; King v. Elkins, 1 Wm. Bl. Rep. 640; King v. Jane Horsley, 5 Term Rep. 362; Hugginson’s Case, 2 Atk. 469; Yeates v. Lansing, 9 John. 417; Constitution of Tennessee, art. 4, § 4.
Officers of courts stand upon the same footing, and therefore the precedents made, in reference to attorneys in England, are every way as conclusive as if the judgments had be'en given directly against constables; other than that, the attorney stands upon much higher ground than the constable. If an attorney has been convicted of a crime, he is deemed a person unfit for the office, and is stricken from the roll (Brownshall’s Case, Cowp. 829), and was commonly sworn in former times never again to practise in any of the king’s courts. 2 Inst. 214; 4 Inst. 101; 2 Inst. 212; Jerome’s Case, Cro. Car. 74. Or if an attorney has been guilty of conduct corrupt *514 in the estimation of the Court, he will he stricken from the roll as above, although it does not in law amount to an indictable offence. King v. Southerton, 6 East, 142; 1 Com. Dig. 630; 2 Hawk. 219. These authorities fully establish the powers of the courts to inquire, upon evidence, in a summary way, into the conduct of its officers, and to remove them, in certain cases, if they are thought unfit for the station. I would here remark that the duties of the attorney in England differ in many respects from those of our attorneys, who are counsellors also. They are holden to be peculiarly the officers of the Court, and subject to its control. 1 Com. Dig. 630; 3 Term Rep. 275; 1 Burr. 20; 1 Stra. 621; 2 Burr. 792; 1 Salk. 87; 1 Burr. 298; 1 Atk. 139; Gwyn v. Kerly, Strange, 402. Having no reports of the proceedings of the inferior courts in England, resort must be had to the rules imposed upon higher and other officers, acting in the superior courts, who have power, partly discretionary, over all their officers (2 Hawk. 219, § 12); and this from necessity, for without it they could not possibly exist.
The English courts of Quarter Sessions having the power to remove constables, what power have our courts of Pleas [172] and Quarter Sessions ? By the Act of 1715, ch. 31, § 6, the common law of England is declared to be in force in the colony of North Carolina. The Act of 1778, ch. 5, § 1, declares that the English common law, and statutes of England, then in force and use, should continue to be in force and use, unless inconsistent with the freedom of the form of government. The Constitution of the State of Tennessee, art. 10, § 3, provides that “all laws then (1796) in force, not inconsistent with the Constitution, should continue in force until altered or repealed.”
By the Constitution, art. 6, § 1, the county courts are given power to appoint constables; this clause in the Constitution recognizes the Act of 1741, ch. 5, § 3 ; by virtue of which constables were appointed before the formation of the Constitution. This Act creates the same relation between the constables of this State and the County Court, which existed between that officer and the courts of Sessions in England. The third section of the Act of 1741 is’ in these words: “That each and every constable so appointed, nominated, and sworn is, and they are hereby invested with, and may execute the same power and authority, to all intents and purposes, as the constables within the kingdom of England are by law invested with, and execute.” It is from this statute that the constables derive all their powers, and by which they are put upon the footing of constables in England, are governed by the common law, and subject to the control of the County Court, for refusing to do their duty when precepts are directed to them by a justice of the peace, as will be seen by the 8th section of said Act. Before our Revolution there can be no doubt that all the common-law rules applied to constables, and that the county courts, having the *515 power to appoint, had the power to remove, to the same extent the courts of Quarter Sessions of England had at the time of the passage of the Act of 1741.
Has the Constitution of the United States, or of this State, abridged the powers of the County Court in this respect ? As the provisions in the two instruments referred to are the "same in substance, I will only examine the Constitution of the State of Tennessee, and inquire whether the fundamental [173] and paramount law there laid down is violated by this exercise of power in the county courts. The 8th section of the 11th article of the Constitution provides “ that no free man shall be taken, or imprisoned, or disseised of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of life, liberty, or property, but by the judgment of his peers or the law of the land.” It is contended, on the part of the defendant, that by this section of the Constitution he was entitled to the “ judgment of his peers ” before he could be deprived' of his privilege of constable, because he was proceeded against for a misdemeanor in office. This doctrine will not bear the test of examination, even by the most visionary theorist, much less when applied to the practical concerns of life by lawyers and men administering the government necessarily by acts, and not words. Suppose the constable was convicted of forgery, bribery, or felony of any kind, would the Circuit Court, who rendered the judgment upon the conviction, be authorized to remove him? Where is the statute or common law to be found that gives the power to render such judgment? No one will pretend that it exists. The constable is, and for centuries has been, recognized as an officer of the County or Sessions Court; and he is removable, for this reason, by that Court, upon evidence, legal in its character, that proves to their satisfaction that he is corrupt, and unfit to fill the appointment. All the rights enumerated in this section of the Constitution, it is contended, must be taken from a free man by the judgment of his peers. Let us examine if this is the true construction. No free man shall be taken or imprisoned, but by the judgment of his peers ; if so, the man guilty of murder and every other crime could not be apprehended; peace warrants could not issue; bail, in civil cases, could not be taken; the mob who despoiled the sanctuaries of religion and justice could not be arrested in its ravages; a contempt could not be punished, although the offender dragged the judge from his seat. Secondly, “ no free man shall be disseised of his liberties or privileges, or his property,” but by what? the judgment of his peers? Certainly not, for this would destroy all [174] the powers of the courts of Chancery, which every day deprive men, by process, of their privileges, liberties, and property, and disseise them of their freeholds, and yet act within the pale of the Constitution; because justice is administered according “ to the law of the land.” Had this latter clause been left out of the Constitution, the *516 government could not possibly be administered. M’Connell v. Weaks, 2 Tenn. Rep. 219.
This section was copied from Magna Charta, ch. 29 (2 Inst. 45), and was the law of the land at the time of the adoption of the Constitution, as the Acts of 1715 and 1778 show, to the same extent it now is; yet that part of Magna Charta was within the reach of legislation, beyond which the convention placed it. The construction of this section of the great charter of the liberties of Englishmen (and, since our Revolution, of all the people of the United States of America) has, for centuries, put to rest the question whether the courts have power to punish for contempts, and regulate their own officers, or remove them in particular cases; as will be seen by examining the Com. of Lord Coke, 2 Inst. 45 ; Sullivan’s Lee. 247; 1 Hum. Hist. Eng. 450; 6 Henry’s Hist. Eng. 79, 80. Hence this part of the Constitution does clearly not stand in the way of the exercise of the common-law power of removal. But it is contended that the 14th section of the 11th article precluded the County Court from proceeding otherwise than by presentment or indictment, the defendant being criminally prosecuted. To this argument if is a sufficient answer to say, that the proceeding to remove was not of the criminal nature contemplated by the Constitution ; that a removal from office for an indictable offence is no bar to an indictment, conviction, and punishment for the same offence. The argument proves too much when it affects to maintain that there must be a conviction for the extortion before there can be a removal from office ; and that the removal must be predicated upon the conviction. Now, if the removal was a punishment, in its nature criminal, the defendant would be first fined and imprisoned for extortion, and then punished a second time for the same crime, which is contrary to [175] all law. The proceeding is in i’ts nature civil, and collateral to any criminal prosecution by indictment, instituted upon the same facts as the Constitution of this State, art. 4, § 4, Brownshall’s Case, Cowp. 829, and the King v. Southerland, 6 East, 152, fully prove. Even had Fields been acquitted by the jury, and the Court had discovered, from the facts proved upon the trial of the indictment, that he was guilty of corrupt practices in a manner not amounting to extortion, yet I have no doubt it would have had the power to make an order of record, calling upon the accused to show cause why he should not be removed from his office; and upon due notice he might have been removed, either upon proof [1] by witnesses, or upon the facts appearing upon the trial of the indictment.. In many matters coming before the Court it must of necessity exercise its *517 legal discretion; for instance, in taxing costs, if the defendant is thought guilty, although acquitted by the jury, by the Act of 1817, ch. 184, § 2, or in taxing the prosecutor by the Act of 1813, ch. 136, § 3, the Court judges of the facts, and gives judgment against the defendant or prosecutor, upon which a fi. fa. or ca. sa. may issue without the privilege of the party being tried by jury; and property, liberty, and supposed privilege are taken away by the Court alone, and yet the Constitution is not violated. The same may be said in the numerous cases where judgments are rendered upon motion ; but all this is done by “ the law of the land.”
It is further contended that the 10th section of the Act of 1796, ch. 7, requires that a constable should be tried and convicted for extortion by indictment, before he is removable by the Court. This is clearly not the meaning of the Act, for it relates to other officers of the government; and if a judgment by motion, or upon the verdict of a jury, in a civil action for receiving fees not due, or for violating the Act in any respect, was twice given against the officer, the Court, [176] as a matter of a duty, are bound to remove him, if such Court have the power ; but if a justice of the peace, this would be evidence to the Senate, upon an impeachment, which would authorize that body to remove. Many violations of the Act would not be indictable, although such as to sustain a civil suit; as will be seen by the 9th and 2d sections of the Act. It is believed that this Act in no wise impugns the common-law powers of the Court to punish its officers for corruption, that disgraces themselves and the Court they serve.
It is also urged that the County Court is a tribunal of limited jurisdiction, and therefore everything must appear upon the record that shows the correctness of the judgment of the justices who acted upon the case. The County Court has as ample powers to punish its officers as any court in the government, and is a court of very general jurisdiction in civil matters, even of more than the English court of Common Pleas, which has ever been ranked as one of the superior courts of the kingdom. Campbell v. M’Iver and Lusk, 4 Haywood, 60. It must appear that the party had notice, as in like cases, to show cause; and a judgment of this nature would be erroneous (and perhaps void) in every other court if this fact did not appear. But the judgment of removal need only be general; and if the defendant is dissatisfied therewith, he may appeal and have the matter retried in the Circuit Court; or he may file his bill of exceptions, and set forth the evidence upon which the judgment was given upon the record, and then take a writ of error. 1 Phillips’s Ev. 233; Bullip N. P. 516. This is the uniform and correct practice in entering up judgments in courts of law, in cases of contempt, and others of a similar nature, within which latter class the present falls. Queen v. Patty and Others, 2 Ld. Ray, 1108; 2 Atk. 489; Yeates’s Case, 4 John. 367.
The defendant in this case had notice, and appeared and defended him *518 self before the County Court when suspended. The Court having jurisdic-diction, we are bound to presume they acted correctly, and that the proceedings are according to law, unless the contrary appears. 2 Hawk. ch 15, §§ 73 and 76; Yeates’s Case, 4 John. 366. The Court having [177] power to remove had power to suspend, which as certainly follows as that the whole includes all the parts. I therefore think the judgment of the Circuit Court must be reversed, and the judgment of the County Court affirmed. ,
This cause was argued in 1825, examined with care, and the above opinion formed and written by myself; but by reason of the absence of one of the sitting members of the Court at the end of the term, no judgment was rendered in the cause at that term. Two members of the Court now sitting have for the first time heard the cause at this term of the Court, when it was reargued.
No reason has occurred to me why the opinion heretofore formed should be in any respect altered; but my brother judges, from the great pressure of business now before the Court, have not had leisure to examine all the reasoning employed in forming that opinion; nor do they deem it incumbent on them to do so in this particular cause, and, therefore, instruct me to say that they concur therein so far as to order that the judgment of the Circuit Court be reversed, and that of the County Court affirmed; which court they conceive to have been well warranted in suspending the defendant in error, Fields, from the exercise of his office of constable for Williamson County, after his conviction for extortion, and an appeal taken therefrom, until the cause of the State against him, upon the indictment, was determined in the Court above.
The attorney for the government has asked this Court to instruct their clerk to tax to him, in the bill of costs, a fee of five dollars in each of the courts through which the cause has passed. Is the solicitor entitled to have his fees taxed ? By the Acts of 1801, ch. 33, § 2 ; of 1807, ch. 13, § 2, of the court law of 1809, § 19; of 1817, ch. 65, § 4, the solicitor is bound to attend to every matter and every prosecution in which the State is in any wise interested, in every court within his district. A proceeding against a delinquent constable, to remove him from office, is as much a matter wherein the State is interested as a prosecution for felony; and the solicitor is as much bound to attend to it. The Act of 1815, ch. 136, § 2, provides “ that in all prosecutions [178] in behalf of the State, where, by the judgment of the Court, the defendant is ordered to pay costs, the attorney for the State shall receive the sum of five dollars, to be taxed in the bill of costs.” If the Court has power to make the defendant pay the costs, then the attorney for the State is entitled to his tax fees; if not, the State and her officer must lose the costs. In England, upon information in the nature of a quo warranto for the misuser of an office, the defendant, if con *519 victed, always pays costs. 3 Bl. Com. 302; 4 Bl. Com. 312; 2 Strange, 1149, 1213. The courts in England tax their officers with costs, for misconduct, at discretion. Gwyn v. Kerly, 1 Strange, 402; 1 Atk. 139; 2 Burr. 654; Barnes, 47, 368, 411; 1 Com. Dig. 634. This discretion, seemingly almost without limit, is the law of this country by our Constitution, and the Act of 1778 ; and is even increased by the Acts of 1813, ch. 136, § 3, and of 1817, ch. 184, § 2; by which the courts are given the discretion to tax a prosecutor, or an acquitted defendant, with costs; even a justice of the peace is given this discretion by the Act of 1817, ch. 100. Under the 74th section of the court law of 1794, the uniform practice of the courts has been to tax with costs the party against whom judgment was given. I think the powers of the Court to tax the defendant with the costs undoubted; that the costs go with the cause, as in civil cases proceeded in by motion ; and that the solicitor is entitled to his fees in the several courts in every case “ where, by the judgment of the Court, the defendant is ordered to pay costs.” The fees of the County, Circuit, and Supreme Courts, must, therefore, be paid by the defendant; and the attorney for the State is, as a matter of right, by the Act of 1794, ch. 1, § 74, entitled to his fee of five dollars in each court, to be taxed in the bill of costs by the clerk of this Court.
On the matter of costs the rest of the Court gave no opinion.

 Original Note. — Reasonable notice must be given: Feb. 12, 1815, 1 Salk. 98, pl. (4); 2 Hayw, Anonymous, 73; 2 Hayw. 339 ; Roberts and als. v. Busby and Wife, 3 Hayw. 299; Campbell v. M’Iver, 4 Hayw. 63; 5 Hayw. 155; Cooke, 360; Sevier v. The Justices of Washington County, Peck’s Rep. 343, 347 ; Rushton v. Aspnall, Doug. 679 ; 1 Saund. 33.